

DA 07-0152

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 343N

IN RE THE CUSTODY OF
L.A.M. AND T.B.M.,

      Minors,

JILL MARIE MOSSO,

      Petitioner and Appellee,

   v.

ROBERT FRANK MOSSO,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV 1999-175
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Terry L. Wolfe, Sol & Wolfe Law Firm, PLLP, Missoula, Montana

      For Appellee:

          Matthew H. O'Neill, O'Neill Law Office, PLLC, Polson, Montana

Submitted on Briefs:  November 28, 2007

Decided:  December 17, 2007

Filed:

_____
                Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. Its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Robert Frank Mosso (Robert) appeals an order of the Twentieth Judicial District Court, Lake County, granting back payment for child support and interest to Appellee Jill Marie Mosso (Jill) in the sum of $130,447.12. Because the District Court's findings of fact are not clearly erroneous and its conclusions of law are correct, we affirm.

¶3 Robert and Jill were originally married in Las Vegas, Nevada in 1989, and their marriage produced two minor children. During the course of their marriage, Robert physically assaulted Jill. A restraining order was issued against Robert in 1995 and is still in effect. Jill and Robert were divorced in Clark County, Nevada on June 13, 1996. The decree of dissolution awarded primary custody of the children to Jill and ordered Robert to pay child support of $1,000.00 per month. It also allowed Jill to move with the children out of the State of Nevada. Sometime after the decree, Jill and the children moved to Polson, Montana. Because Robert had physically abused Jill during their marriage, Robert was prohibited from having Jill's address and telephone number until he received counseling and a court order permitting him access to this information. To facilitate child support payments, Robert was ordered to send the payments to Jill's

father, who lived in Las Vegas, Nevada. Robert was given this address and has had it since the decree of dissolution was entered.

¶4 In February 1997, the Nevada Court modified the decree of dissolution. This modification stipulated that, as long as Jill lived outside of Nevada, she would provide transportation for the children to visit their father in Nevada at least three times per year. It also stipulated that Robert first undergo a supervised visit with a psychologist before he be allowed unsupervised visits with this children. Further, the decree stipulated that the restraining order issued against Robert in 1995 would remain in effect except when Robert and Jill were exchanging the children.

¶5 Robert quit paying child support in the fall of 1996. He later resumed payments, making them until sometime in late 1997 or early 1998, when he moved to San Diego, California. During the 1997 or 1998 holidays, Robert requested visitation with the children, but Jill denied his request. In the fall of 1998, because she was having difficulty supporting the children, Jill sent one child to live with her sister in Nevada, and the other to live with her mother in Seattle. In 1999, the children moved back to Montana with Jill. Sometime during that year, Jill discussed with Robert the possibility of the children going to visit him for the holidays, and made mention of child support payments. Robert told Jill she would be the next Nicole Simpson if she sought child support for the children. Given the prior history of abuse, Jill took this threat seriously.

¶6 In May of 1999, the State of Nevada attempted to collect child support from Robert on behalf of Jill's sister, with whom one of Jill's children was then living. During that time, Robert filed a motion to modify custody in California, and later filed a similar

3

motion in Nevada. The court in Nevada concluded that Montana was the appropriate forum, and ordered Jill to file her decree of dissolution here. She did so. At some point in May of 2000, the State of Montana Child Support Enforcement Division made an attempt to collect child support from Robert, but these efforts were not successful.

¶7 On January 18, 2006, Jill filed a petition in the Twentieth Judicial District, Lake County, seeking past child support payments from Robert in the amount of $ 158,107.40, for the period of January 1, 1997 to January 1, 2006. The District Court ultimately awarded a judgment to Jill in the amount of $130,447.12. In its order, the District Court found that Robert was delinquent in child support payments from January 1, 1999 onwards, and that Jill never agreed that Robert did not have to pay child support. Further, the District Court found that Robert had not requested visitation with the children since 1998, that Robert had known Jill was living in Montana since 1999, and that Robert had never arranged to have his supervised visits conducted in accordance with the amended decree of dissolution. The District Court also found that Robert was aware of Montana's jurisdiction over the dissolution since December 1999, and had never attempted to modify the decree in Montana. Finally, the District Court found Robert was willing to pay child support and acknowledged it was in the best interests of his minor children to do so. As a result, the District Court concluded that Jill was entitled to back child support payments with interest.

¶8 On appeal, Robert argues that some of the District Court's findings of fact were clearly erroneous, painting a skewed picture of Jill as the victim and Robert as the victimizer. Additionally, Robert asserts that Jill engaged in a "purposefully orchestrated

4

scenario whereby Robert was led to believe that denial of the parental relationship was exchanged for his child support obligation." Accordingly, Robert argues the District Court erred in failing to find that Jill was equitably estopped from seeking child support payments under *In Re Marriage of Shorten*, 291 Mont. 317, 967 P.2d 797 (1998).

¶9 We review a district court's findings of fact under the clearly erroneous standard, and its conclusions of law to determine if they are correct. *Adoption of C.R.N.*, 1999 MT 92, ¶ 7, 294 Mont. 202, ¶ 7, 979 P.2d 210, ¶ 7. "The court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, if the court has misapprehended the effect of the evidence, or if our review of the record leaves us with a definite or firm conviction that a mistake has been made." *State v. Munson*, 2007 MT 222, ¶ 18, 339 Mont. 68, ¶ 18, 169 P.3d 364, ¶ 18. We leave the determination of the credibility of witnesses to the trial court. *State v. Bauer*, 2002 MT 7, ¶ 15, 308 Mont. 99, ¶ 15, 39 P.3d 689, ¶ 15.

¶10 We affirm the decision of the District Court. Robert has failed to demonstrate that the District Court's findings are clearly erroneous. In fact, our review of the record confirms that the District Court's findings are supported by substantial credible evidence. Moreover, the District Court correctly concluded that Jill was not equitably estopped from seeking back child support payments from Robert. The doctrine of equitable estoppel prevents a parent from seeking back child support payments when all of the elements of the doctrine are proven by clear and convincing evidence. *Shorten*, 291 Mont. at 321-322, 967 P.2d at 800. Robert has not met his burden of proof to demonstrate that this doctrine applies here. Of particular note is the fact that Jill

requested child support from Robert in 1999 and was threatened with physical violence in return. Robert's attempts to argue that Jill is equitably estopped from seeking child support, in light of these threats, rings hollow.

¶11    For these reasons, we affirm the District Court, with each party to pay their own costs and attorneys' fees.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS